# United States Court of Appeals
# for the Federal Circuit

---

**ALFRED PROCOPIO, JR., JOHNNIE HARPER,
MICHAEL YATES, MICHAEL KVINTUS, BLUE
WATER NAVY VIETNAM VETERANS
ASSOCIATION, MILITARY-VETERANS
ADVOCACY,**
*Petitioners*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2019-2184

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: December 5, 2019

---

JOHN B. WELLS, Law Office of John B. Wells, Slidell, LA, argued for petitioners.

ERIC PETER BRUSKIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, BRANDON A. JONAS, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper LLP (US), San Diego, CA, for amicus curiae Association of the United States Navy.  Also represented by AMY WALTERS, East Palo Alto, CA.

BRIAN KEITH LEWIS, Francis White Law, PLLC, Woodbury, MN, for amicus curiae Federal Bar Association Veterans & Military Law Section.

_____

Before NEWMAN, MOORE, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge.*

Alfred Procopio, Jr., Johnnie Harper, Michael Yates, Michael Kvintus, Blue Water Navy Vietnam Veterans Association, Inc., and Military-Veterans Advocacy, Inc. (collectively, Petitioners) filed a petition for expedited review pursuant to 38 U.S.C. § 502 challenging the authority of the Secretary of Veterans Affairs to stay pending disability compensation claims until January 1, 2020.  We have jurisdiction to decide the present petition under 5 U.S.C. § 552(a)(1)(D) because the Secretary's memorandum amounts to an "interpretation[] of general applicability formulated and adopted by the agency."  *See* 5 U.S.C. § 552(a)(1)(D).  Because the Secretary had the authority, pursuant to Section 2(c)(3) of the Blue Water Navy Vietnam Veterans Act of 2019 (Pub. L. No. 116-23, 133 Stat. 966, 968 (2019)) (the Act), to stay pending disability compensation claims from the date of the Act's enactment, June 25, 2019, until its effective date, January 1, 2020, we deny the petition for review.

BACKGROUND

The individual petitioners in this case are Blue Water Navy Veterans who served on open sea ships off the

Vietnamese shore during the Vietnam War.[1] Following our decision in *Procopio v. Wilkie* this year, many Blue Water Navy Veterans were afforded hope that they may be entitled to a presumption of service connection for diseases covered by 38 U.S.C. § 1116.[2] 913 F.3d 1371 (Fed. Cir. 2019) (en banc). Their hope was then further bolstered by Congress' passing of the Act, which provides relief for many of these veterans who, prior to this court's *Procopio* decision, were without such relief. But the Secretary's decision to stay awarding of benefits pursuant to the Act poses new problems for Blue Water Navy Veterans many of whom, Petitioners assert, are dying and may not live to see the benefits provided by the Act. According to Petitioners, the journey for benefits has been long enough and many Blue Water Navy Veterans "are running out of time." Petitioners' Br. 3.

In 1991, Congress passed the Agent Orange Act, codified at 38 U.S.C. § 1116, granting a presumption of service connection for certain diseases to veterans who "served in the Republic of Vietnam":

---

[1] Messrs. Procopio, Harper, Yates, and Kvintus are Blue Water Navy Veterans. The remaining petitioners are veterans' advocacy groups that assist Blue Water Navy Veterans with their claims. Petitioners' Br. 12; *see, e.g.*, *About*, MILITARY VETERANS ADVOCACY, INC., https://www.militaryveteransadvocacy.org/about.html (last visited Nov. 12, 2019) (stating its mission includes to "[t]hrough legislative advocacy protect and expand the rights and benefits of current and former members of the armed forces"); *see* J.A. 2–3, 20–26, 48–50, 51–52, 53–55.

[2] As to Mr. Procopio, we previously held that "the unambiguous language of 38 U.S.C. § 1116 entitles Mr. Procopio to a presumption of service connection for his prostate cancer and diabetes mellitus . . . ." *Procopio v. Wilkie*, 913 F.3d 1371, 1373 (Fed. Cir. 2019) (en banc).

(A) a disease specified in paragraph (2) of this subsection becoming manifest as specified in that paragraph in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975; and (B) each additional disease (if any) that (i) the Secretary determines in regulations prescribed under this section warrants a presumption of service-connection by reason of having positive association with exposure to an herbicide agent, and (ii) becomes manifest within the period (if any) prescribed in such regulations in a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, and while so serving was exposed to that herbicide agent, shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of evidence of such disease during the period of such service.

38 U.S.C. § 1116(a). Under § 1116(f), such a veteran "shall be presumed to have been exposed during such service to [the] herbicide agent . . . unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service." *Id.* § 1116(f).

In 1993, the Department of Veterans Affairs (VA) issued regulations pursuant to § 1116 that stated "'Service in the Republic of Vietnam' includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam." 38 C.F.R. § 3.307(a)(6)(iii) (1993) (Regulation 307). But in 1997, in a General Counsel opinion about a different regulation, the government interpreted Regulation 307 as limiting service "in the Republic of Vietnam" to service in waters offshore the landmass of the Republic of

Vietnam only if the service involved duty or visitation on the landmass, including the inland waterways of the Republic of Vietnam, ("foot-on-land" requirement).  Vet. Aff. Op. Gen. Counsel Prec. 27-97 (July 23, 1997); 62 Fed. Reg. 63,603, 63,604 (Dec. 1, 1997).  In 2002, VA amended its internal adjudication manual "to specifically incorporate the agency's 'foot-on-land' interpretation of the Agent Orange regulations." *Haas v. Peake*, 525 F.3d 1168, 1182 (Fed. Cir. 2008) (citing M21-1, part III, ¶ 4.24(e)(1) (Feb. 27, 2002) (stating a veteran "must have actually served on land within the Republic of Vietnam . . . to qualify for the presumption of exposure to herbicides")), overruled on other grounds.  In *Procopio*, we held that "those who served in the 12 nautical mile territorial sea of the 'Republic of Vietnam' are entitled to § 1116's presumption if they meet the section's other requirements."  913 F.3d at 1380–81.

On June 25, 2019, the Act was enacted to "clarify presumptions relating to the exposure of certain veterans who served in the vicinity of the Republic of Vietnam . . . ."  Pub. L. No. 116-23, 133 Stat. 966.  Section 2(a) of the Act amends Chapter 11 of title 38, "by inserting after section 1116" the section to be codified as 38 U.S.C. § 1116A.  *Id.* § 2(a).  Section 1116A clarifies the "[p]resumptions of service connection for veterans who served offshore of the Republic of Vietnam."  38 U.S.C. § 1116A; *see id.* § 1116A(d) (defining "offshore of Vietnam" as "not more than 12 nautical miles seaward of a line commencing on the southwestern demarcation line of the waters of Vietnam and Cambodia and intersecting the following points . . . .").  Section 1116A(a) provides:

> For the purposes of section 1110 of this title, and subject to section 1113 of this title, a disease covered by section 1116 of this title becoming manifest as specified in that section in a veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and

> ending on May 7, 1975, shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of evidence of such disease during the period of such service.

*Id.* § 1116A(a). Section 1110 establishes basic entitlement to compensation by the United States "[f]or disability resulting from . . . disease contracted in line of duty . . . in the active military, naval, or air service, during a period of war . . . ." *Id.* § 1110. And Section 1116A(b) addresses presumed exposure to an herbicide agent for "[a] veteran who . . . served offshore of the Republic of Vietnam during [the relevant time period] . . . unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service." *Id.* § 1116A(b).

Section 2(c) of the Act addresses its implementation. Section 2(c)(3), entitled "Pending cases," provides that "[t]he Secretary may stay a claim . . . [B] . . . for disability compensation . . . (i) relating to the service and diseases covered by such section 1116A; and (ii) that is pending at the Veterans Benefits Administration or the Board of Veterans' Appeals on or after the date of the enactment of this Act and before the date on which the Secretary commences the implementation of such section 1116A." Pub. L. No. 116-23, § 2(c)(3), 133 Stat. at 968. Such claims may be stayed "until the date on which the Secretary commences the implementation of such section 1116A." *Id.* § 2(c)(3)(A). The effective date of Section 1116A is January 1, 2020. *Id.* § 2(g), 133 Stat. at 969 ("The amendments made by this section shall take effect on January 1, 2020.").

On July 1, 2019, the Secretary issued a memorandum, purportedly exercising his authority under the Act "to stay certain pending claims for benefits that may be affected by that Act until implementation of the statutory amendments Congress directed to go into effect on January 1, 2020." J.A. 1 ¶ 1. The memorandum ordered "[t]he Veterans Benefits Administration (VBA) and Board of Veterans'

Appeals (Board) . . . to stay decisions regarding claims for disability compensation that are based on service in the off-shore waters of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, and which claim disability resulting from at least one of the diseases listed in 38 C.F.R. § 3.309(e)."[3] *Id.* ¶ 2 (citing Pub. L. No. 116-23, § 2(c)(3), 133 Stat. at 968). It further indicated that such "stays shall remain in effect until January 1, 2020." *Id.* ¶ 6.

On July 8, 2019, counsel for Petitioners requested that the Secretary rescind or clarify the July 1 memorandum imposing the stay because: (1) the stay is premature as the Act is not effective until January 1, 2020; and (2) the Act only authorizes the Secretary to stay claims under § 1116A. J.A. 2–3. On July 17, the Secretary responded that he was authorized to "stay claims pending as of the date of enactment . . . June 25, 2019," and that the stay applies to claims "filed under the provisions of *Procopio*" as well. J.A. 56–57. On July 25, Petitioners filed a petition for expedited review under 38 U.S.C. § 502 challenging the Secretary's authority to stay pending disability compensation claims until January 1, 2020.

JURISDICTION

We have jurisdiction to decide the present petition under 5 U.S.C. § 552(a)(1)(D). 38 U.S.C. § 502 establishes our jurisdiction to review actions by the Secretary that are covered by 5 U.S.C. §§ 552(a)(1) or 553. Included within § 552(a)(1) are "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability

---

[3] 38 C.F.R. § 3.309(e) provides the list of diseases "associated with exposure to certain herbicide agents" that are subject to presumptive service connection if certain other requirements are met.

formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). The Secretary's memorandum amounts to an "interpretation[] of general applicability formulated and adopted by the agency." *Id.*

The government argues that reading § 552(a)(1)(D) to cover the Secretary's memorandum as a statement of general policy or interpretation of general applicability would be unreasonably expansive. It argues that the stay is no different from any other agency actions, which are all implicitly based on the agency's view that it has the authority to take such actions. Contrary to the government's view, however, the Secretary's memorandum explicitly interprets the Act's stay provision. The memorandum explains the Secretary's understanding that the Act gives him the authority to implement the stays now, prior to the Act's effective date, and that the Act-authorized stays terminate with the Act's effective date on January 1, 2020. J.A. 1. It further explains the Secretary's understanding that the Act gives him the authority to stay claims based on diseases listed in 38 C.F.R. § 3.309(e), which relate to claims brought under § 1116, even though the claims were not brought under § 1116A. Indeed, Petitioners' challenges are directed to the Secretary's interpretations of § 2(c)(3) of the Act. Specifically, Petitioners challenge (a) whether the stay provision had become effective such that it provided authority for implementation of the current stay; (b) whether the Act provides an end date for the Secretary's authority to stay cases; and (c) whether the stay can be applied to veterans' benefits claims under § 1116 as opposed to § 1116A. Because the Secretary's memorandum contains interpretations of his stay authority under the Act and Petitioners' challenges are directed to those interpretations, the interpretations fall under § 552(a)(1)(D) and we have jurisdiction to review the substance of the petition.

DISCUSSION

We review an agency's interpretation of a statute it is charged with implementing, like § 1116A, under the two-part framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, we first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If it has, we "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Here, Congress' intent is clear. The Act unambiguously authorizes the Secretary to stay disability compensation claims described in § 2(c)(3)(B) of the Act "until the date on which the Secretary commences the implementation of [] section 1116A." Pub. L. No. 116-23, § 2(c)(3)(A), 133 Stat. at 968. We agree with the parties that the date of implementation of § 1116A is January 1, 2020, the effective date of the Act. Oral Arg. at 13:44–14:12 ("Judge: Is it the government's position that § 1116A stay authority, which allows the Secretary to issue stays up until implementation of § 1116A, only allows the Secretary to issue stays up until January 1, 2020, and after that, this statutory section at least, gives the Secretary no further stay power? Government: Yes."); *id.* at 12:57–13:03 ("Judge: Does the Secretary's authority to do any further stays expire on January 1? Government: That is what we stated in our brief."). Therefore, in order for the Secretary's stay authority to have any meaning at all, it must have commenced on June 25, 2019, when the Act was enacted.

Congress' intent to this effect is further evidenced by § 2(c)(3)(B) of the Act, which identifies the claims subject to the Secretary's stay authority as those relating to the service and diseases covered by § 1116A that are

"pending . . . on or after the date of the enactment of this Act and before the date on which the Secretary commences the implementation of [] section 1116A." Pub. L. No. 116-23, § 2(c)(3)(B), 133 Stat. at 968. Like the Secretary's other implementation authorities and obligations described in § 2(c) of the Act, the plain language of this provision reflects Congress' intent for the Secretary's stay authority to become effective as of the Act's enactment to serve as a temporary tool to help him effectively implement § 1116A. *See id.* § 2(c)(3)(A). Accordingly, we agree with the Secretary that the Act unambiguously authorizes him to stay the disability compensation claims described in § 2(c)(3)(B) of the Act, beginning on the date of the Act's enactment and ceasing on the Act's effective date.

Petitioners have expressed concern that the Secretary will continue issuing stays beyond the effective date of the Act, thereby further delaying veterans' access to benefits. Oral Arg. at 9:58–10:01 ("I'm not sure that I trust the Secretary to maintain six months."); *id.* at 12:20–30 ("Even if [a] decision comes out in December or January that is favorable to us, it will prevent any further extensions or the addition of any additional stays."). The government, however, may not issue or extend stays beyond January 1, 2020. *Id.* at 12:57–13:03, 13:44–14:12. The statute is clear and the government has agreed that the Secretary is permitted to issue stays only until January 1, 2020 after which no stays are permitted. Moreover, the government has represented that "VBA has continued processing and developing claims" and that "VA intends to grant such claims starting on January 1, 2020, when the stay expires." Government's Br. 11. In fact, the government represented that Mr. Procopio's claim is not affected by the stay and will be decided in due course.[4] Oral Arg. at 14:58–15:58. The

---

[4] On November 8, 2019, the government submitted a letter to the court pursuant to Fed. R. App. P. 28(j) to clarify

Secretary's interpretation is therefore consistent with Congress' express intent in limiting the Secretary's stay authority to the period between the Act's enactment on June 25, 2019 and its effective date of January 1, 2020. Because we "must give effect to the unambiguously expressed intent of Congress," we do not reach *Chevron* step two. *Chevron*, 467 U.S. at 843.

Having determined that § 2(c)(3) of the Act grants the Secretary the authority to stay pending disability compensation claims from the date of the Act's enactment, June 25, 2019, until its effective date, January 1, 2020, we next consider whether such authority extends to pending claims pursuant to § 1116. We hold that it does. Petitioners argue that the Secretary's memorandum does not differentiate between § 1116 and § 1116A, but that the Act does not authorize the Secretary to stay claims for benefits filed under § 1116 and/or *Procopio*. Petitioners' Br. 38–42 (citing J.A. 1). Petitioners argue that "*Procopio* addresses claims for benefits filed under 38 U.S.C. § 1116 and covers claims of veterans who served in the territorial sea," but the Act, which states "[c]hapter 11 of title 38, United States Code, is amended by inserting after section 1116 the following new section" does not repeal the existing statute. Petitioners' Br. 39. The government argues "petitioners['] attempt to differentiate between claims that rely on the section 1116 presumption from those relying on the section 1116A presumption finds no support in the Act or elsewhere in title 38." Government's Br. 34.

---

statements made during oral argument. The letter represents that although "the board erroneously believed until November 6, 2019 that it was prevented from reaching a final decision on Mr. Procopio's remand claim because of the Secretary's stay," the board is "currently working to reach a final decision." Government's 28(j) Letter 1.

We do not decide whether § 1116A replaces § 1116. Both parties have raised arguments as to why the two sections may have separate applications. Petitioners' Br. 38–42; Government's Br. 34–41. But it is clear that the § 1116A stay authority extends to both § 1116A and § 1116 claims. Sections 1116A and 1116 cover the same list of diseases that are eligible for presumptive service connection. Section 2(c)(3) of the Act, which addresses "pending cases," provides that "[t]he Secretary may stay a claim . . . for disability compensation . . . *relating to the service and diseases covered by such section 1116A . . . .*" Pub. L. No. 116-23, § 2(c)(3), 133 Stat. at 968 (emphasis added). And § 1116A(a) conveys Congress' intent that § 1116A covers the same diseases as those covered by § 1116. 38 U.S.C. § 1116A(a) ("For the purposes of section 1110 of this title . . . *a disease covered by section 1116 of this title* becoming manifest as specified in that section in a veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam . . . .") (emphasis added); *id.* § 1110 ("For disability resulting from . . . disease contracted in line of duty . . . in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled . . . compensation. . . ."). Therefore, these claims by Blue Water Navy veterans, whether filed before enactment of § 1116A or after, are covered by this stay provision. We conclude that the Secretary properly interpreted the stay provision to extend to § 1116 claims.

We have considered Petitioners' arguments regarding the impropriety of the stays and conclude that the Secretary did not abuse his discretion in applying the stay provisions of § 1116A to claims submitted under § 1116.

CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. We hold that the Secretary had the authority, pursuant to Section 2(c)(3) of the Act, to stay such claims from the date of the Act's

enactment, June 25, 2019, until its effective date, January 1, 2020, and therefore we deny the petition for review.

**DENIED**

Costs

The parties shall bear their own costs.